## ISRAEL *v.* ARTHUR.

ERROR TO THE SUPREME COURT OF THE STATE OF COLORADO.

No. 903. Submitted January 29, 1894. — Decided March 12, 1894.

This court has no jurisdiction to revise the decision of the highest court of a State, in an action at law, upon a pure question of fact, although a Federal question might arise if the question of fact were decided in a particular way.

The decision by the highest court of a State that a woman divorced from her husband in a proceeding instituted by him and by a decree which does not bind her, who marries another husband, and lives with him as his wife, is thereby estopped, after the death of the first husband, from setting up a claim to a widow's share in the distribution of his estate, presents no Federal question for revision by this court.

MOTION to dismiss. Abbie A. Israel, under the name of Abbie A. Arthur, filed her petition in the county court of Laramie County, Colorado, in the matter of the estate of John Arthur, deceased, May 17, 1881, alleging that John Arthur died intestate and without children; that she was his widow; that James B. Arthur had been appointed administrator and was in possession of decedent's property, and committing breaches of his duty as such; that he, as a brother of John Arthur, and certain other brothers and sisters, and descendants of a deceased sister, claimed to be entitled to the estate as heirs at law; and that the relationship of petitioner to the decedent and her rights in his estate were ignored; and she prayed that she might be declared the sole distributee of said estate, and heir at law of John Arthur, deceased, and that the administrator be required to account accordingly. The defendant an-

swered, denying any misappropriation of the estate, and that the petitioner was then or ever had been the widow of John Arthur; and for a second defence, defendant, admitting the intermarriage of petitioner with John Arthur, alleged that on February 9, 1875, a decree was duly entered by the county court of Laramie County in favor of John Arthur and against petitioner, dissolving the bonds of matrimony theretofore existing between them; and for a further defence alleged that on June 12, 1877, a second decree of divorce was duly made and entered in said court in favor of John Arthur and against petitioner. Replication was filed July 21, 1881, denying the new matter in the answer. On March 30, 1884, petitioner filed her amended and supplemental petition to her original petition, wherefrom it appeared that the judgment of the county court on the trial of the issues made as above stated was against petitioner, but that that judgment was reversed by the Supreme Court of Colorado, as were also the decrees of divorce of 1875 and 1877, both of which were held to be null and void and of no effect for want of jurisdiction. *Israel* v. *Arthur*, 7 Colorado, 5; Id. 12; 6 Colorado, 85.

The amended and supplemental petition detailed alleged misfeasances and wastes of the administrator and reiterated petitioner's claim to the proceeds of the estate as the widow of John Arthur, and prayed relief. The amended and supplemental answer of the defendant, filed April 9, 1884, admitted that the decrees of divorce were voidable at the option of petitioner for want of due and legal service upon her, but averred that after the decrees were rendered, petitioner, with full knowledge thereof, "ratified, affirmed, assented to, and acquiesced in the same and each of them in this, to wit, in that after the same had been rendered and in the lifetime of the said John Arthur, the said defendant, by force and virtue of the said decrees and under and in pursuance thereof, entered voluntarily into a contract of marriage with one James H. Israel and caused and procured the said contract of marriage to be duly and legally solemnized, and thereunder took upon herself and assumed the relations of wife to the said James H. Israel, and thenceforward and at all times thereafter continuously, by virtue of

the said solemnization of said marriage contract, lived and cohabited with the said James H. Israel as his wife until and ever since the death of the said John Arthur."

The answer also set forth the particulars of the elopement of petitioner with and marriage to Israel, and grounds why it had been impossible for the administrator to learn the facts in time to plead them to the original petition.

In a further answer, filed the same day, the charges of waste and misfeasance were denied. To this answer a demurrer was interposed April 28, 1884. A further supplemental answer was filed August 28, 1884, setting up that the administrator had in all things faithfully discharged the duties of his trust and administered the estate and was ready to make his final accounting whenever required by order of court. To this answer a replication was filed by petitioner September 23, 1884.

The record proper does not show the action either of the county court or of the Supreme Court on these pleadings, but in the opinion of the Supreme Court of Colorado in this case it appears that judgment was rendered in favor of the petitioner and the cause again taken to the Supreme Court, which held that the facts set up in the amended answer were sufficient to debar or estop petitioner from claiming any property rights as the widow of John Arthur, deceased.

Upon the cause being again remanded to the county court the petitioner filed a new replication, January 27, 1891, to the amended and supplemental answer of the administrator, averring the alleged decrees of divorce to be absolute nullities, and that the Supreme Court of the State had so declared, and that the administrator was thereby estopped from saying that she was not the widow of John Arthur when he died; and the replication proceeded as follows:

" And this petitioner avers that she is a citizen of the United States and a citizen of the State of Colorado, and, as widow of said John Arthur, deceased, as aforesaid, she became at his death the sole heir of his said estate, consisting of certain lands, tenements, and hereditaments and personal property at the said county of Laramie, and as such heir-at-law of him,

the said John Arthur, the said lands, tenements, and heredit-
aments immediately vested in her and she is now and ever
since has been seized of the same and entitled to the posses-
sion, use, and enjoyment of the same; that the personal
estate of him, the said John Arthur, was and is more than
sufficient to pay all the debts of him, the said John Arthur,
and that she, the said petitioner, as such sole heir, is the
sole distributee of the said personal estate after the payment
of said debts and the cost of administration, and the same
and the right thereto became thereupon vested in her and
thence hitherto has been vested in her as an indefeasible
right guaranteed to her by the laws and constitution of the
State of Colorado and by the Constitution of the United
States, and that she has never been summoned or impleaded
in any court or action in which any of her said rights or
property have been adjudged lost, forfeited, or taken from
her by any due process of law; that the Supreme Court of
this State in its judgments heretofore rendered has declared
and adjudged that this petitioner was the widow of the said
John Arthur at the time of his decease, and that such de-
cisions constitute the law of this case, and that by virtue of
the laws of the State of Colorado she is, as such widow, the
sole heir of him, the said John Arthur; that a judgment of
this court dismissing her said petition and giving her said
property to others would, if affirmed by the Supreme Court
of this State, be the taking of her private property without due
process of law, in contravention of the Fourteenth Amend-
ment to the Constitution of the United States; that a judg-
ment of this court dismissing her said petition for the
commission of supposed crimes averred in said supplemental
answer to have been committed by her would, if affirmed by
the Supreme Court of this State, constitute an *ex post facto*
law of the State of Colorado, in contravention of section ten,
article one, of the Constitution of the United States; that a
judgment of this court dismissing her said petition for the
supposed crimes alleged in said supplemental answer to have
been committed by her would, if affirmed by the Supreme
Court of this State, constitute a law of attainder of the State

of Colorado, in contravention of section ten, article one, of the Constitution of the United States; that a judgment of this court dismissing her said petition and transferring her said property to others would, if affirmed by the Supreme Court of this State, constitute an act of judicial legislation without the sanction of law and against the rights of this petitioner guaranteed to her by both the constitution of this State and the Constitution of the United States.

" And this petitioner denies that after the said pretended decrees of divorce were rendered, she with full or any knowledge that they had been rendered, or otherwise or at all, ratified or affirmed or assented to or acquiesced in the same or either of them; denies that there were any decrees to ratify, affirm, assent to, or acquiesce in, and avers that the pretended judgments and decrees of divorce mentioned in said amended and supplemental answer were *nil* and could not be ratified or affirmed or assented to or acquiesced in by her.

" Denies that said pretended judgments or decrees of divorce had or were of any force or virtue; denies that in the lifetime of the said John Arthur, by force and virtue of said pretended decrees or under or in pursuance thereof or otherwise, she entered voluntarily or otherwise into a contract of marriage with one James H. Israel; denies that she caused or procured any contract of marriage to be duly or legally or at all solemnized between herself and the said James H. Israel in the lifetime of the said John Arthur; denies that any contract of marriage could have been duly and legally solemnized between her and the said James H. Israel in the lifetime of her late husband, the said John Arthur, deceased; and this said petitioner denies that in the lifetime of said John Arthur, upon the supposed knowledge that the said pretended decrees of divorce had been rendered coming to the said petitioner and the said James H. Israel, she desired to use the said supposed privilege conferred by said pretended decrees or to accept the supposed benefit thereof, and denies that she procured a marriage to be solemnized between her and the said James H. Israel in the lifetime of her late husband, John Arthur, deceased, and she avers that said pretended decrees of

divorce conferred no privilege she could use and provided no benefits whatever which she could have accepted."

She further denied that she and Israel went away from the place where they were living to some place unknown or remote therefrom, or were married secretly in due form of law in the lifetime of John Arthur, or that she had ever admitted or confessed that she had been duly or at all married to Israel after the rendition of the pretended decrees and in the lifetime of Arthur, as averred in the answer.

On June 8, 1891, the case came on for trial in the county court, and the following appears in the bill of exceptions :

" Thereupon on behalf of the petitioner it was stipulated and admitted by the respondent that the decrees set up in the respondent's amended and supplemental answer were rendered as therein alleged, and that the same are and were void when rendered, and that the only question now being tried is as to whether the plaintiff is estopped by her conduct as alleged in said answer to dispute or contest the validity of said decrees or whether she has ratified them by her conduct."

The testimony introduced on both sides is then set forth. The county court found in favor of defendant, and gave judgment, June 23, 1891, with costs, " that the petitioner, Abbie A. Israel, of right ought to be and is estopped to aver or claim that she is the widow or heir of the said John Arthur, deceased, or the distributee of his estate. Wherefore it is considered, adjudged, and decreed by the court that the petition of the said petitioner be and the same is hereby denied and dismissed." The cause was taken by writ of error to the Supreme Court of Colorado, and on June 17, 1893, that court rendered its judgment, affirming the judgment of the county court. The court reviewed the evidence, and held that the proof was sufficient to warrant the trial court in finding that plaintiff in error had actually contracted and consummated the marriage between herself and the second husband before the death of the first, and that the substance of the issue formed upon the amended complaint was proved; and the ruling in *Arthur* v. *Israel*, 15 Colorado, 147, that the amended answer was sufficient in law to debar or estop petitioner

from claiming any property rights as the widow of John Arthur, deceased, was reaffirmed. *Israel* v. *Arthur*, 18 Colorado, 158. A petition for rehearing was filed and overruled, and thereupon a writ of error was allowed to this court, which defendant in error moved to dismiss.

*Mr. George A. King* for the motion.

*Mr. Westbrook S. Decker* and *Mr. T. J. O'Donnell* opposing.

Mr. Chief Justice Fuller, after stating the facts, delivered the opinion of the court.

It is not sufficient for the maintenance of our jurisdiction to review the judgments of state courts, that a right, title, privilege, or immunity under the Constitution of the United States may have been claimed, but such right, title, privilege, or immunity must have been denied. Assuming that plaintiff in error, by her replication of January 27, 1891, duly set up a right of protection under the Constitution, yet if she were debarred from asserting property rights in the estate of John Arthur, as his widow, then that right was not denied for want of the subject-matter to be protected.

The Supreme Court of Colorado ruled in *Arthur* v. *Israel*, 15 Colorado, 147, that public policy required "that, so far as may be consistent with fundamental principles of law, one who has attempted to profit by a supposed divorce, and has exercised the resulting privilege of remarriage, shall not, for the mere purpose of obtaining property, be permitted to repudiate his election;" and that "when, therefore, the wife, without cause, deserts her husband and home, and for years lives in adultery with another man, and afterwards, upon learning that a divorce has been obtained by her deserted husband, causes a marriage ceremony with her paramour to be solemnized, and continuously lives and cohabits with him as his wife, she may not, upon the subsequent decease of her abandoned husband, take advantage of the fact that the divorce decree is void for want of proper service of process, and successfully assert against other heirs her right under the

statute of descents and distribution to deceased's estate as his widow." And on the subsequent writ of error it sustained the judgment of the county court against plaintiff in error upon the facts.

With the conclusion on the facts we have nothing to do, and the conclusions of law were conclusions in matters of local and general law which suggest no Federal question:

By stipulation of record plaintiff in error admitted at the trial that, the invalidity of the divorce decrees being conceded, the only question to be tried was whether she was "estopped by her conduct as alleged in said answer to dispute or contest the validity of said decrees, or whether she has ratified them by her conduct."

That question was determined against her, and the judgment rested solely on the ground that she could not under the facts be allowed, as to John Arthur's personal estate, to assert the property rights conferred by law upon a widow. To review that judgment would be to overhaul the application by a state court of principles of public policy and of estoppel, which it is not within our province to do. This was so held in *Marrow* v. *Brinkley*, 129 U. S. 178, and in effect in many other cases. *Adams' County* v. *Burlington & Missouri Railroad*, 112 U. S. 123; *Chouteau* v. *Gibson*, 111 U. S. 200; *Beaupré* v. *Noyes*, 138 U. S. 397.

In *Eustis* v. *Bolles*, 150 U. S. 361, it was ruled that a decision by the Supreme Judicial Court of Massachusetts that a creditor of an insolvent debtor who proved his debt in insolvency proceedings under the state statutes and accepted the benefits thereof, thereby waived any right he might otherwise have had to object to the validity of the insolvency statutes as impairing the obligation of contracts, presented no Federal question for review. And it has been often held, at least in actions at law, that this court has no jurisdiction to revise the decision of the highest court of a State upon a pure question of fact, although a Federal question might arise if the question of fact were decided in a particular way. *Dower* v. *Richards*, 151 U. S. 658, and cases cited.

*Writ of error dismissed.*