JOHN BACON, ALEXANDER SYMINGTON, AND THOMAS ROBINS, COMPLAINANTS AND APPELLANTS, *v.* VOLNEY E. HOWARD.

By the laws of the Republic of Texas, no action would lie on a foreign judgment, and all actions of debt were prescribed in four years.

When about to form a Constitution, for the purpose of becoming a State of the Union, the Legislature passed a law permitting suits to be brought on foreign judgments, but limiting them to sixty days when the judgment was of four years standing and upward.

The plaintiffs' bill attempted to avoid the effect of the last limitation as to their judgment, which was more than four years old, on the ground that they lived more than two thousand miles distant, and could not know of the passage of the last act within time to prosecute their action.

Held, that the last-mentioned statute conferred a favor, and was not retrospective; and that plaintiffs' action was barred, whether he knew of the act or not.

The Constitution of the United States does not restrain the right of each State to legislate as to the remedy on suits on judgments in other States.

THIS case was an appeal from the District Court of the United States for the district of Texas.

The case is stated in the opinion of the court.

It was argued by *Mr. Hale* for the appellants, and *Mr. Hughes* for the appellee.

Mr. Justice GRIER delivered the opinion of the court.

The complainants are assignees of a judgment obtained by the Planters' Bank against the defendant, in the State of Mississipi. The charter of the bank has been forfeited. The complainants, as equitable owners of the judgment, demand payment by their bill. The judgment claimed by them is dated on the 19th of October, 1840, and their bill was filed on the 22d of October, 1850. Anticipating the defence of the statutes of limitation of Texas, the bill avers "that, at the time of passage of the act of Congress of the Republic of Texas, approved June 28th, 1845, entitled 'An act to authenticate foreign judgments, and to limit suits thereon,' the defendants resided in San Antonio, Texas, and the complainants in Philadelphia—more than 2,000 miles apart; and that complainants could not, according to the regular course of the mails, and with any reasonable diligence, have learned the passage of said act, and caused suit to be instituted upon the judgment within sixty days after its passage." The respondent has demurred to the bill, and assigns as a cause of demurrer, among other reasons, "That the complainants, by their own showing, are barred by the first section of an act entitled 'An act of limitations,' approved February 4, 1841, and also by the fourth section of the act referred to in the bill.".

If this allegation be found correct, it will be unnecessary to notice the others.

On the 10th of January, 1841, the Legislature of the Republic of Texas enacted, "That no suit, proceeding, judgment, or decree, shall be brought, prosecuted, or sustained, in any court or judicial magistracy of this Republic, on any judgment or decree of any court or tribunal of any foreign nation, State, or Territory," &c. "But this provision is in no degree to affect the validity or obligation of contracts, engagements, or pecuni-

ary liabilities, originating abroad, or the original evidence, test-imony, or proof, to establish the same," &c.

On the 5th of February, 1841, "An act of limitations" was passed, the first section of which, after prescribing shorter limitations for other causes of action, declares that "all actions of debt grounded on any contract in writing shall be commenced and sued within four years next after the cause of such action, and not after."

Without criticising the peculiar expressions used in these acts, it is obvious that their policy and object was to bar the prosecution of any claim for money or property at farthest in four years from the time when the right of action first accrued.

Now, the original cause of action, on which the judgment in question was obtained, must have existed or accrued at the latest on the 19th of October, 1840, when judgment was entered thereon in the court of Mississippi. Counting from that date, the action would have been barred on the 19th of October, 1844. But assuming that the time did not commence to run till the 17th of March, 1841, when the act of 5th February, 1841, is said to have taken effect, the action was barred on the 17th of March, 1845.

On the 23d of June, 1845, the Congress of the Republic gave their consent to the annexation of Texas to the United States, and the Convention which formed the Constitution of the State met on the 4th of July of the same year.

It would seem that doubts and apprehensions were entertained that, when Texas became a State of the Union, that section of the Constitution of the United States which prescribed that full faith and credit should be given to the judicial proceedings of each State might have the effect of reviving the claims of creditors in other States, on which judgments had been obtained. To obviate this anticipated difficulty, an act was passed on the 28th of June, 1845, "To prescribe the mode of authenticating foreign judgments, and to limit suits thereon." The fourth section of this act provides: "That all foreign judgments, decrees, and adjudications, upon which suit shall be brought in the courts of this Republic, should the same be of four years' standing and upwards, shall be forever barred and prescribed, unless sued on in sixty days from and after the passage of this act; those under four and over two years, unless sued on in six months; and those under two years, unless sued on in one year: *Provided,* the original cause of action shall remain unimpaired, and may be sued on at the election of the creditor, subject to prescription."

At first view, this act might be accused of making a very curt limitation, and to be retrospective in its operation. But

when it is recollected that it gives a new form of remedy before denied, and that it only continues the rule of limitation to which the cause of action was already subject, and in fact gave a further grace to the creditor, he has no right to complain.

Giving the complainant in this case the most favorable construction of the act of limitations of 1841, his cause of action was barred on the 17th of March, 1845. The act of June, 1845, took away no existing right, but extended the time till the 27th of August of the same year. It is, therefore, not retrospective in its operation. It confers a favor, though it be a small one. The complainants may have failed to take advantage of it, for the reasons set forth in the bill. But the Legislature has not seen fit to make any saving in the act in favor of distant creditors, and the court cannot interpolate it. The Republic of Texas had the power to prescribe such rules to its own courts as best suited their condition, and their policy cannot be mistaken. Its accession to the Union had no effect to annul its limitation laws, or revive rights of action prescribed by its previous laws as an independent State. It is true, any legislation which denied that full faith and credit which the Constitution of the United States requires to be given to the judicial proceedings of sister States would be *ipso facto* annulled after the annexation, on the 29th of December, 1845. Thereafter, the authenticity of a judgment in another State, and its effect, are to be tested by the Constitution of the United States and acts of Congress. But rules of prescription remain, as before, in the full power of every State. There is no clause in the Constitution which restrains this right in each State to legislate upon the remedy in suits on judgments of other States, exclusive of all interference with their merits. The case of McIlmoyle *v.* Cohen (13 Peters, 312) leaves nothing further to be said on this subject.

The 20th section of the 7th article of the Constitution of the State of Texas exhibits the extreme solicitude of her citizens to prevent any misconstruction of their cherished policy on this subject.

It declares that "the rights of property and of action which have been acquired under the Constitution and laws of the Republic of Texas shall not be divested; nor shall any rights or actions which have been divested, barred, or declared null and void, by the Constitution and laws of the Republic of Texas, be reinvested, revived, or reinstated, by this Constitution, but the same shall remain precisely in the situation which they were before the adoption of this Constitution."

The complainant's cause of action had been twice barred before annexation, and this section of the new Constitution

leaves no room to question the policy of their laws as to a revival of rights once forfeited by laches.

In a case like the present, where the complainant has been compelled to have recourse to a court of chancery, because the Union Bank no longer exists, in whose name the action of law could be sustained, he is, of course, subject to the same rules of prescription as if he were in a court of law.

We are of opinion, therefore, that complainant's cause of action is barred by the statutes of Texas, and that the matters set forth in the bill to avoid their effect are insufficient.

The judgment of the District Court of Texas is therefore affirmed, with costs.